IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS SLOANE, individually and on behalf of all persons similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-1208<br>Judge Nora Barry Fischer |
| GULF INTERSTATE FIELD SERVICES, INC. | ) ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION**</u>

I.    INTRODUCTION

This wage and hour collective/class action challenges the compensation system that Houston-based staffing company Defendant Gulf Interstate Field Services, Inc. ("Gulf") utilizes to pay inspectors that it places to work on projects for clients operating in the oil and gas industry at sites throughout the United States. (Docket No. 1). Plaintiff Thomas Sloane ("Sloane") worked as a welding inspector for Gulf during parts of 2014 at a compression station operated by Kinder Morgan in Wyalusing, Bradford County, Pennsylvania and also on a Kinder Morgan pipeline project in Oklahoma. (Docket No. 99-6 at ¶ 4; *Sloane Deposition 3/24/16*). Sloane claims that Gulf improperly designated him as an exempt employee and that he was paid under a day rate system that did not guarantee any portion of his salary in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201*, et seq.* and the Pennsylvania Minimum Wage Act, ("PMWA"), 43 P.S. § 333.101, *et seq.* (Docket No. 1). Sloane seeks conditional certification of a nationwide collective action under the FLSA consisting of approximately 1,860 inspectors during the past three years and a related class action comprised of an estimated 158 inspectors who worked in Pennsylvania throughout the same time period. (*See* Docket Nos. 85, 86, 126, 127).

1

There are presently two related motions pending before the Court, albeit in different procedural postures. (Docket Nos. 85, 126). First, Sloane's motion for conditional certification of the nationwide FLSA collective action is fully briefed and counsel provided oral argument as to same at a motion hearing held on May 26, 2016. (Docket Nos. 85, 86, 92, 93, 99, 101, 103, 109, 115, 117-120; *Hr'g Trans. 5/26/16*). Second, Sloane's motion for conditional certification of the Pennsylvania class was more recently filed, with further briefing still due under the Court's scheduling Order. (Docket Nos. 74, 126, 127). For the following reasons, the Court finds that Sloane has failed to demonstrate any connection of this action to the Western District of Pennsylvania, despite the Court providing him with a full and fair opportunity to do so. According, this matter will be transferred to the U.S. District Court for the Middle District, Williamsport Division pursuant to 28 U.S.C. § 1404(a), i.e., the District wherein Sloane worked at the Wyalusing, Pennsylvania compressor site. Finally, this Court will decline to rule on the pending motions in deference to the transferee court.[1]

II.    RELEVANT BACKGROUND

This lawsuit represents the second attempt of Plaintiff's counsel to bring a nationwide FLSA collective action against Gulf asserting that the payment system for its inspectors violates federal overtime laws. In *Hughes v. Gulf Interstate Field Services, Inc.*, 2015 WL 4112312 (S.D. Ohio July 7, 2015), the U.S. District Court for the Southern District of Ohio denied conditional certification of a nationwide collective and certified a more narrow collective action that includes only Gulf employees placed at a project in Ohio operated by Mark West. *Id.* at *4. The *Hughes* matter is ongoing and the Docket Report at Civil No. 2:14-cv-00432-EAS-EPD reflects that

---

[1]    It was this Court's initial intent to address the merits of these motions separately. (Docket No. 74). However, the parties' arguments rely upon the same factual record and the legal issues at issue in these motions are related enough that several other courts have ruled upon such motions in a single, consolidated Opinion.

2

motions filed by Gulf seeking summary judgment and decertification are presently pending before the District Court.[2] *Id.*

With that backdrop, the Court returns to the relevant facts of this matter. Houston-based Gulf provides construction inspection services for companies that operate oil and gas transportation systems, including pipelines. (Docket No. 85-6 at 5, *Sprick Deposition I* at 12:15-20). Gulf's executive, human resources and payroll functions are performed in Texas. (Docket Nos. 99-5; 99-6; 99-9). During the past three years, Gulf has placed approximately 1,860 inspectors with at least forty-seven (47) different clients on projects located in thirty-nine (39) states. (Docket Nos. 85-11 at 7; 99-6 at ¶ 5; 99-9 at ¶ 3). Gulf maintains separate contractual agreements with each of its clients and charges them for services rendered by inspectors on a cost reimbursable basis. (*See e.g.*, Docket No. 99-9 at ¶¶ 10, 11). The client agreements typically consist of general terms and conditions and a rate sheet which identifies the charge to the client in terms describing the markup on inspector salaries that must be paid by the client for the inspector services. (*Id.*).

The inspectors working for Gulf have 10 different titles, including: chief inspector; assistant chief inspector; welding inspector; utility inspector; corrosion inspector; COR inspector; environmental inspector; safety inspector; coating inspector and electrical inspector. (Docket No. 115-2 at 3, 6). The parties generally dispute whether the duties of the inspectors are meaningfully different or not but appear to agree at least that chief inspectors and assistant chief inspectors have supervisory authority over the others. (Docket Nos. 86, 99, 101, 109). The

---

[2] The parties reference the *Hughes* litigation repeatedly throughout their respective submissions. To the extent necessary, the Court takes judicial notice of the docket report and existence of this pending lawsuit. *See Steadfast Ins. Co. v. Environmental Barrier Co., LLC*, 2016 WL 878122, at *2, n.2 (W.D. Pa. Mar. 8, 2016) (McVerry, J.) (citing FED. R. EVID. 201; *Schuylkill Health Sys. v. Cardinal Health, Inc.*, 2014 WL 3805466, at *1 (E.D. Pa. Mar. 14, 2014)). Naturally, it is up to the assigned District Judge to determine the appropriate time to rule on the pending motions and, although any such decisions rendered by the Southern District of Ohio may not be binding in this litigation, they may be persuasive to any rulings on similar issues present here.

3

parties also contest whether Gulf pays certain of its inspectors[3] a guaranteed salary, which would preclude overtime compensation, or a "day rate" pursuant to which they would be entitled to overtime pay. (*Id.*). In any event, Gulf designates the relevant inspectors as exempt, salaried employees and does not pay them overtime. (Docket No. 115-2 at 16). Gulf relies upon three different exemptions to justify its designations for these inspectors, (i.e., executive, 29 C.F.R. 541.100; administrative, 29 C.F.R. 541.200; and, highly compensated, 29 C.F.R. 541.601). (*Id.*). The application of all or some of these exemptions is dependent upon: the individual inspector's title; his/her job duties; and the rate of compensation. (Docket No. 99-6 at ¶ 9). The level of compensation for each inspector is determined on an individual basis after discussions between company executives and members of the human resources department. (*Id.*). The company does not maintain written compensation policies detailing an inspector pay scale; rather, it sets forth the general terms of the employment relationship in individual letters provided to the inspector upon his/her starting work on a particular project. (Docket No. 99-6 at ¶ 9). For several years, the letters were succinct but, after becoming involved in the *Hughes* litigation, the company issued more detailed letters to each of its inspectors in 2014, as is more fully described below.

Despite the designation of inspectors as exempt employees, the company requires each individual inspector to fill out a weekly timesheet. (*See e.g.*, Docket No. 95-5, Ex. 4). The inspectors are instructed to write 10 hours in the time column for each day that was worked during the calendar week. *Sloane Deposition 3/24/16* at 188, 229. (Per diem and mileage are

---

[3] The Court notes that Gulf pays some inspectors on an hourly basis, including those working on projects in California and for its client Enterprise. (Docket No. 86 at n.3). Those individuals are not included within the proposed collective action which consists of:
> all current and former employees of Gulf Interstate Field Services, Inc. ("GIFS") who performed work as a pipeline inspector in the United States in any workweek between three years prior to the date of the Court's Order and the present ("Inspectors"), excluding Inspectors for any period during which they worked on the MarkWest Ohio project, any Kinder Morgan project in California, and any Enterprise project during 2013.

(Docket No. 85-1).

also reported on the timesheet). The inspector forwards the timesheets to his/her supervisor, who conducts an initial review of same and then sends it to the back office employees in Houston. (*Id.*). Necessary adjustments are made to the timesheets by the human resources department, at which time they are sent to the client as proof that the inspector worked during the weeks in question. (*Id.*).

Gulf placed approximately 158 inspectors with clients on projects within the Commonwealth of Pennsylvania during the past three years.  Within this timeframe, from January of 2014 through September of 2014, Gulf had a contract with Kinder Morgan to provide inspectors on a compression station project in Wyalusing, Pennsylvania. (Docket No. 99-9 at P 11).  This site is located in Bradford County, Pennsylvania, which is in Northeastern Pennsylvania and within the Williamsport Division of the Middle District of Pennsylvania. *See Middle District of Pennsylvania, County Map*, http://www.pamd.uscourts.gov/sites/default/files/COUNTIES.jpg (last visited 7/26/16). There is no evidence that Gulf placed any inspector to work for a client at a location within the Western District of Pennsylvania.

A total of eight inspectors were sent by Gulf to work on the Kinder Morgan project in Wyalusing. (Docket No. 99-9 at ¶ 23).  Sloane is one of those eight individuals and he worked as a welding inspector at that site from April 14, 2014 through September of 2014. (Docket No. 99-6 at ¶ 4; *Sloane Deposition 3/24/16*). He was then transferred to another Kinder Morgan project in Oklahoma where he worked until October 20, 2014, at which time he was laid off. (*Id.*). Sloane was the only Gulf inspector staffing the Kinder Morgan project in Oklahoma at the time he was there. (*Id.*).

Aside from his work for Gulf at the Wyalusing site during the relevant time period, Sloane has no connection to Pennsylvania. He is a native Texan and lives in Comal County,

Texas, which is near San Antonio. (Docket No. 1-1). He is a high school graduate and a veteran of the United States Army. *See Sloane Deposition 3/24/16* at 55-60. Sloane has some experience in the oil and gas industry and has earned a number of certifications, including certification as a welding inspector.[4] *Id.* at 63-66.

As noted, Sloane was employed by Gulf as a welding inspector from April 14, 2014 through October 20, 2014. The initial pay letter dated April 11, 2014 describes Sloane's compensation as "salary: $386.00/Calendar day (as approved by client)." (Docket No. 85-14). The gross amount of Sloane's pay for all seven days of a work week was $2,702.00, i.e., $386.00 times seven. The second pay letter dated June 17, 2014, states that his compensation is "Fixed Salary: $386/Day – Guaranteed seven (7) days per week." (Docket No. 99-6). The second pay letter continues to explain that:

> [y]ou are being hired as a full time oil & gas pipeline inspector. This is an exempt position, which means you are not entitled to overtime pay. You will be paid your guaranteed salary (stated above) if you are at the job site and ready and willing to work. You will not be paid while you are away from the job site for personal reasons. GIFS expects you to devote your full business time and best efforts in the performance of your job duties. In consideration of your services, you will be paid a salary.

(*Id.*). Sloane admitted that he signed this second letter, although he claimed he did not read it prior to doing so. *Sloane Deposition* at 181. Sloane submitted timesheets to his supervisor as required by Gulf, marking all days that he worked in the field with 10 hours, as he was instructed. (Docket No. 95-5, Ex. 4). Some of timesheets that Sloane submitted indicate that he

---

[4] Sloane also has a checkered past, with several prior criminal convictions for a variety of offenses, and has spent several different periods of time incarcerated, including a 17 month stint in a Texas correctional facility between May 23, 2010 and November 22, 2011 as a result of a burglary conviction. *See Sloane Deposition* at 103-04; *see also* Docket No. 66. At his deposition, Sloane admitted that he lied on his resume by suggesting that he was working for a prior employer from 2010 through 2012, omitting the time he had spent in custody. *See Sloane Deposition* at 175-76. Sloane attributes his past criminal behavior to substance abuse and to his credit, has been sober for the past six years. *Id.* at 99.

6

worked less than all seven days during a particular week. (*Id.*). Gulf made adjustments to those timesheets prior to sending them to Kinder Morgan, reflecting that he worked 10 hours on every day during the weeks that he was assigned to that client. (*Id.*). Gulf's pay records indicate that Sloane was paid the full gross amount of $2,702.00 for every week of his employment, aside from the first and last weeks, which resulted in reduced pay because his start and end dates did not correspond to the beginning and end of the weeks for pay purposes. (Docket No. 95-5, Ex. 3; Docket No. 99 at 19). Hence, Sloane's actual gross pay did not meaningfully change after the issuance of the second pay letter in June of 2014. (*Id.*).

At this juncture, five individuals have filed opt-in notices seeking to join the FLSA collective action against Gulf. (Docket Nos. 14; 15; 18; 54; 75). Notably, the declarations and other evidence pertaining to these individuals make clear that <u>none</u> of the opt-in plaintiffs worked on projects in Pennsylvania. (Docket Nos. 14; 15; 18; 54; 75; 85-23; 85-24; 85-25; 85-26). In addition, they each had different job titles, worked for separate clients, and worked in various locations throughout the United States. (*Id.*). Their respective work histories with Gulf consist of the following.

| Individual | Title | State | Client | Start Date | End Date | Citation |
|---|---|---|---|---|---|---|
| Al Hinkle | Welding Inspector | West Virginia | MarkWest | Aug. '12 | Dec. '12 | (Docket No. 85-23) |
| Al Hinkle | Welding Inspector | Missouri | Embridge | Oct. '13 | Mar. '14 | (Docket No. 85-23) |
| Justin Bish | Utility Inspector | West Virginia | MarkWest | Jun. '11 | Oct. '13 | (Docket No. 85-24) |
| Justin Bish | Asst. Chief Inspector | West Virginia | MarkWest | Oct. '13 | Feb. '14 | (Docket No. 85-24) |
| Justin Bish | Asst. Chief Inspector | Ohio | MarkWest | Feb. '14 | Mar. '14 | (Docket No. 85-24) |
| Richard Stapleman | Quality Control Inspector | Arizona | Kinder Morgan | Oct. '13 | Dec. '13 | (Docket No. 85-25) |
| Richard Stapleman | Chief Inspector | New Mexico | Kinder Morgan | Mar. '15 | Apr. '15 | (Docket No. 85-25) |
| Richard Stapleman | Chief Inspector | Texas | Kinder Morgan | Apr. '15 | May '15 | (Docket No. 85-25) |
| Richard Stapleman | Chief Inspector | Arizona | Kinder Morgan | May '15 | June '15 | (Docket No. 85-25) |
| Rodney LaLonde | Field Engineer | West Virginia | MarkWest | Mar. '12 | May '12 | (Docket No. 85-26) |
| Rodney LaLonde | Chief Inspector | West Virginia | MarkWest | May '12 | Sept. '13 | (Docket No. 85-26) |
| Rodney LaLonde | Chief Inspector | Ohio | MarkWest | Sept. '13 | Sept. '14 | (Docket No. 85-26) |
| Rodney LaLonde | Asst. Chief Inspector | New York | Williams Cos. | Feb. '15 | June '15 | (Docket No. 85-26) |
| Boggs Pollet | unstated | Mississippi | unstated | May '14 | Oct. '15 | (Docket No. 75) |

7

The declarations submitted by these individuals contain the same rote statements that during their respective employment they: worked between six and seven days per week and more than 10 hours per day; almost always worked more than 40 hours per week; and were not paid overtime compensation during weeks when they worked more than 40 hours. (Docket Nos. 85-23; 85-24; 85-25; 85-26). As is reflected in the above chart, two of the opt-ins, Justin Bish and Rodney LaLonde, worked on projects for MarkWest in Ohio and therefore, are a part of the ongoing *Hughes* litigation in the Southern District of Ohio for those time periods listed in the above chart. (*See* Docket Nos. 85-24; 85-26).

Sloane became involved in this matter after hearing a radio advertisement several times during the period of March through August of 2015 when he was working in the Corpus Christi, Texas area for another employer.[5] *See Sloane Depostion 3/24/16* at 14-18. He confirmed that the radio advertisement told listeners that they may be entitled to unpaid overtime compensation under the FLSA if they were paid a "day rate." *Id.* The advertisement directed listeners to contact Bruckner Burch PLLC if they desired to pursue a claim. *Id.* Sloane testified that he contacted the law firm at some point during the summer of 2015, although he could not confirm a particular date that he did so. *Id.*

Around the same time, the litigation of the *Hughes* case against Gulf was ongoing. The District Court denied the motion for conditional certification of the FLSA collective action in *Hughes* on July 7, 2015. *See Hughes*, 2015 WL 4112312. Approximately one week later, on July 16, 2015, Sloane electronically signed a "Notice of Consent" form titled "In re: FLSA Claims Against: Gulf Interstate Field Services, Inc., et al," which states that he "consent[ed] to be a party plaintiff in an action to collect unpaid wages [and] agreed to be bound by the

---

[5] The Court notes that at the case management conference held in February of 2016, Sloane's counsel from Berger & Montague, P.C. denied that they had taken out advertisements anywhere upon a direct question by the Court. (Docket No. 65 at 32).

Professional Services Agreement." (Docket No. 1-2).  Two months after electronically signing this form, on September 16, 2015, Sloane filed his Class and Collective Action Complaint in this District Court.  (Docket No. 1).  The Class and Collective Action Complaint avers that "[v]enue in this Court is proper pursuant to 28 U.S.C. § 1391.  The events giving rise to Plaintiff's claims occurred within this District, and Defendant conducts business in this District." (*Id.* at ¶ 3).  The pleading continues that "Plaintiff Thomas Sloane is a Texas resident who was employed by Gulf Interstate as a pipeline inspector in Western Pennsylvania and Oklahoma between approximately April 2014 and October 2014." (*Id.* at ¶ 4).  Aside from the assertions that Sloane had worked in this District for Gulf, there are no other specific factual allegations describing where Gulf operates in the Western District of Pennsylvania. (*See generally* Docket No. 1).  Sloane's attorneys selected the Pittsburgh Division on the attachment to the Civil Cover Sheet, rather than Erie or Johnstown, and the matter was assigned by the Clerk of Court to this Court.  (Docket No. 1-1 at 2).  Gulf has not objected to the propriety of venue in this District as it did not move to transfer venue as part of its Motion to Dismiss that was previously denied by this Court and later conceded that venue is appropriate in its Answer.  (Docket Nos. 6, 7, 66, 73).

The Court *sua sponte* raised the issue of whether venue should be transferred to the Middle District of Pennsylvania at a motion hearing convened on May 26, 2016 for the purpose of hearing argument on the pending motion for conditional certification of the FLSA collective action.  *See Hr'g Trans. 5/26/16* at 4-8.  At the hearing, the Court initially outlined the above facts indicating that the evidence submitted by the parties proved that: the allegation that Sloane worked in this District was false; that none of the other opt-ins worked for Gulf in Pennsylvania or this District; and, at most, perhaps a pipeline traversed the Erie Division.  *Id.*  In response to the Court's inquiry, Plaintiff's counsel indicated that he was not prepared to address venue at that

9

time but that he would look into the matter. *Id.* He represented to the Court that the case was filed in this District based upon the investigation of counsel that Sloane had been working for Gulf in this District, which may have been erroneous. *Id.* at 15-16. Plaintiff's counsel set forth no general objection to his claim proceeding in the Middle District, conceding that there were many of these types of actions pending in that District. *Id.* The only argument made by counsel against transferring venue was that the Court should conditionally certify the collective action before transferring so that the notice of the suit could be provided to any affected individuals. *Id.* at 17. At the hearing, counsel for Gulf did not counter the Court's assessment that venue should be transferred to the Middle District of Pennsylvania or that there was no evidence in the record that Sloane or any of the opt-ins had worked for Gulf in the Western District of Pennsylvania. *See Hr'g Trans. 5/26/16* at 76-80.

At the conclusion of the motion hearing, the Court entered an order setting a schedule for the parties to file any supplemental briefs addressing the issues raised during the course of the motion hearing, which necessarily included the venue issue raised by the Court. (Docket Nos. 115, 116; *Hr'g Trans. 5/26/16* at 85-86). The parties made supplemental filings on June 2, 2016, June 3, 2016, June 16, 2016 and June 23, 2016. (Docket Nos. 117, 118, 119, 120, 123, 125). However, none of these submissions addressed the Court's concerns about maintaining venue in this District or objected to the proposed transfer to the Middle District of Pennsylvania. (*See id.*). On July 25, 2016, the Court received the official transcript of the May 26, 2016 from the official court reporter[6] and the venue issue is now ripe for disposition. *See Hr'g Trans. 5/26/16*.

---

[6] The Court's staff was advised that the parties have failed to pay for the copy of the transcript, to date. Hence, the transcript has not been filed of record at this time.

### III. LEGAL STANDARD

The discretionary transfer statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It is well established that this Court retains "broad discretion" to transfer venue when justice so requires after weighing the private and public factors set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). *See also Ogundoju v. Attorney General of U.S.*, 390 F. App'x. 134, 137 n.2 (3d Cir. 2010). The relevant private interests include: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of the books and records. *Jumara*, 55 F.3d at 879. The cited public interests include: (1) the enforceability of the judgment; (2) practical considerations of expediting trial and reducing costs; (3) administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Id.*

### IV. DISCUSSION

The Court will proceed to evaluate whether this case should be transferred to the U.S. District Court for the Middle District of Pennsylvania under the discretionary transfer statute, 28 U.S.C. § 1404(a), without much assistance from the parties because they failed to specifically address the venue concerns raised by the Court in any of their supplemental filings. (Docket Nos. 117, 118, 119, 120, 123, 125). The sole objection lodged by Sloane to the proposed discretionary transfer is that this Court should issue the notice to similarly situated individuals to who are potentially the subject of the motion to conditionally certify the FLSA collective action

prior to transferring the matter.  *See Hr'g 5/26/16* at 15-17.  As this argument was raised during the course of the motion hearing, Sloane's counsel did not support this position with any legal authority, and despite the implication that they would "figure it out" after the hearing, they have not done so through supplemental briefing or otherwise.  *Id.*  Having further considered the matter, the Court finds that it is in the interests of judicial comity to transfer this case prior to rendering a decision on the pending motion for conditional certification and defer to the transferee court to make that determination.

The Court reaches this decision for several reasons.  First, as is more fully discussed below, a fair weighing of the *Jumara* factors in this case leads this Court to exercise its broad discretion and transfer the case to the Middle District of Pennsylvania given that there has been no evidence presented to this Court of any potentially affected inspectors working for Gulf within the Western District of Pennsylvania during the relevant timeframe.  *See Jumara*, 55 F.3d at 883.  Second, the transferee court that will be presiding over the matter going forward should be provided with the opportunity to evaluate the parties' evidence and address the scope of any collective and/or class action, particularly given the role of judicial administration over this type of litigation as any settlement of FLSA claims and Rule 23 class actions require judicial approval.  *See* 28 U.S.C. § 216(b); *see also Erheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("Under FED. R. CIV. P. 23(e), a district court's primary role is to determine whether the settlement is fundamentally fair, reasonable, and adequate.") (citations omitted).  Third, this litigation has been contentious, to say the least,[7] and any decision by this Court conditionally certifying all or part of the collective action prior to transferring the matter may be subject to

---

[7] The Court notes that the parties have had numerous discovery disputes throughout this litigation requiring intervention by the Court, the most recent of which resulted in the ordering that Sloane sit for a third session of his deposition due to his failure to produce responsive documents to Gulf's counsel in advance of the prior sessions. (*See* Docket No. 135).

12

further litigation in the transferee court. *See e.g., Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 168-70 (3d Cir. 1982) (noting that although principles of judicial comity generally result in a transferee court following decisions made prior to the transfer, the rule is not absolute and several recognized exceptions would permit the transferee court to revisit a decision by the transferor court). The collective action is likewise related to the Rule 23 class action certification motion that is now pending but not yet fully briefed and ripe for review, as both motions essentially rely upon the same factual predicate. (*See* Docket Nos. 126, 127). Hence, it is clearly in the interests of judicial economy for a single Judge to decide these important issues in the case and a piecemeal ruling by this Judge prior to the proposed transfer may create additional litigation and increase costs for the parties, counter to the dictates of Rule 1 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 1 (the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Fourth, the *Hughes* case remains ongoing in the Southern District of Ohio with defense motions for summary judgment and to decertify pending and any rulings by that Court may be persuasive to the Judge deciding the parties' arguments in this particular litigation such that it makes good sense to await that decision prior to addressing the merits. *See e.g., United States v. Stock*, 2012 WL 202761, at *8 (W.D. Pa. Jan. 23, 2012) (noting that only cases from the Court of Appeals for the Third Circuit and the Supreme Court of the United States are binding on a U.S. District Judge but that District Court decisions may be persuasive). For example, it would be an odd result if this Court certified a collective action of any scope (national or limited to the Kinder Morgan project) and then shortly thereafter the *Hughes* court enters a ruling decertifying the collective action of the MarkWest employees. Finally, the Court does not believe that Sloane's

argument that delayed notification seriously affects the rights of potentially affected inspectors is well-taken, in light of the facts that:

- as Sloane confirmed during his deposition – his counsel has actively advertised looking for potential claimants in this realm;
- this is the second attempt at filing a nationwide FLSA collective action against Gulf;
- the opt-in plaintiffs have all preserved their respective claims for limitations purposes;
- the statistics cited by Sloane's counsel indicating that approximately 15 percent of affected employees eventually opt-in to this type of suit; and,
- Gulf supplied 8 inspectors to Kinder Morgan to work at the site in Wyalusing under a contract that was of a short duration, (from January through September of 2014), and any claims filed for this period remain well within the three year limitations period.

Accordingly, the Court will move on to its transfer analysis without resolving the pending motion for conditional certification of the FLSA collective action. *Cf. In re Joann Patenaude*, 210 F.3d 135, 146 (3d Cir. 2000) ("Deference is not abdication."). Having carefully considered the matter, the Court holds that the relevant private and public *Jumara* factors support a discretionary transfer to the Middle District of Pennsylvania.

In this Court's estimation, the most relevant of the private *Jumara* factors, the first, second and fourth factors, all weigh in favor of the proposed transfer. *See Jumara*, 55 F.3d at 883. With respect to the first of the private factors, it is true that the Western District of Pennsylvania is the plaintiff's choice of forum but his forum preference is "lightly disturbed" by the transfer to the District where he worked for Gulf that has led to his overtime claim. As is detailed above, Sloane's counsel conceded that the case was filed here based on the erroneous assumption that Sloane had worked in this District, as is alleged in the Complaint.[8] (*See Hr'g*

---

[8] The Court also questions whether forum shopping played a part in this decision, particularly in light of the repeated reliance by Sloane's counsel on this Court's decision in *Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) to support Sloane's position.

*Trans. 5/26/16* at 15-16; Docket No. 1 at ¶¶ 3-4). Of course, the facts developed during the discovery period reflect that Sloane worked at a compressor site located in Wyalusing, Pennsylvania in the Middle District. (Docket No. 99-6 at ¶ 4; *Sloane Deposition 3/24/16*). Hence, Sloane's claim for unpaid overtime compensation arose, if at all, in that District or the Southern District of Texas, the location of Gulf's payroll and human resources activities.[9] *See e.g., Tahir v. Avis Budget Group, Inc.*, 2009 WL 4911941, at *5 (D. N.J. Dec. 14, 2009) (FLSA claim arose either in state where plaintiff worked or in the location where defendant made the challenged policy decision to misclassify him as exempt employee). Further, none of the opt-in plaintiffs worked in this District or Pennsylvania. (Docket Nos. 75; 85-23; 85-24; 85-25; 85-26). At most, Sloane has made a general assertion that he believes that Gulf employed inspectors on part of the pipeline that is connected to the Wyalusing compressor station but he has not provided the Court with any evidence to support such assertion. *See Hr'g Trans. 5/26/16* at 15-17. Overall, the evidence as to the first and second factors strongly supports the transfer. *See Jumara*, 55 F.3d at 883.

The convenience of the potential witnesses also favors transfer to some degree. In this regard, although the Gulf-Kinder Morgan contract has concluded, the compressor station is still operating there and it remains likely that potentially affected inspectors still work and/or reside in that area, and/or that third party witnesses from Kinder Morgan are located within the Middle District of Pennsylvania. *See e.g., Carpenters Combined Funds, Inc. v. Kelly Systems, Inc.*, 2015 WL 3457872, at *9 (W.D. Pa. May 29, 2015) (interests of non-party witnesses properly considered as part of evaluation). In contrast, the Court has <u>no</u> evidence that there are any witnesses located within this District. The remaining factors directing the Court to review the

---

[9]     Neither party suggests that this matter should be transferred to one of the District Courts in Texas. The Court believes that such a transfer would be inappropriate given the joinder of the Pennsylvania claims set forth in the Complaint and that are the subject of the pending motion for class certification. (Docket Nos. 1, 126, 127).

15

convenience of the parties and the location of the books and records are neutral in the Court's analysis. *See Jumara*, 55 F.3d at 883. To this end, the parties are actively litigating this matter from afar as neither the parties nor the opt-ins are Pennsylvania residents[10] and the books and records have been exchanged electronically, although there have been unnecessary delays in discovery on both sides. *See Armstrong Dev. Properties, Inc. v. Ellison*, No. CIV.A. 13-1590, 2014 WL 1452322, at *6 (W.D. Pa. Apr. 14, 2014) ("the location of the books and records, neither favors nor disfavors a transfer because the evidence in this case could more than likely be produced electronically in either forum."). Accordingly, the Court believes that a fair weighing of the private *Jumara* factors supports a transfer.

The Court reaches the same conclusion when viewing the public *Jumara* factors. *See Jumara*, 55 F.3d at 883. The most relevant of the public factors is that there is a local interest in deciding local controversies. Here, the citizens of the Middle District of Pennsylvania have an interest in having the local courts decide whether a business operating in that District violated federal overtime laws or not. *See e.g., Carpenters*, 2015 WL 3457872, at *10 (holding that ERISA controversy was localized in the District where the affected union members worked). In contrast, as there is no connection to this District, none of the citizens here would have any interest in this case – a complex matter that involves possibly 2,000 inspectors working in other locales.

The factor surrounding court congestion also favors a transfer. This Court compared the two Districts over one year ago in *Carpenters*, pointing out that the Middle District has a greater weighted civil filing score than this Court but that the Middle District has a full complement of District Judges. *Id.* at *11. The Court reasoned at the time that court congestion was neutral as

---

[10] The convenience of the parties' lawyers that maintain Pittsburgh offices is not controlling under *Jumara*. *See e.g., Northgate Processing, Inc. v. Spirongo Slag McDonald, L.L.C.*, Civ. A. No. 15-1116, 2015 WL 7308675, at *4, n.3. (W.D. Pa. Nov. 19, 2015).

both courts had capable jurists and robust ADR Programs. *Id.* Revised statistics from the Administrative Office of the Federal Courts are similar but the Court must underscore that this District is now approaching four full years of operating with 3 empty District Judge seats[11] and several Senior Judges are scheduled to depart in the coming months.[12] *See* Administrative Office of the U.S. Courts, *Caseload Statistics Data Tables*, period ending Mar. 31, 2016, *available at:* http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last visited 7/26/16). Accordingly, the Court must hold that court congestion supports the transfer of this type of case that has no real connection to this District. Finally, because the proposed transfer is to another District within the Commonwealth of Pennsylvania, many of the factors remain neutral, including: (1) the enforceability of the judgment; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 882-83 ("The fact that the two fora are adjacent districts of the same state also obscures the interest-of-justice analysis. None of the following factors exist: (1) a likelihood of an enforcement problem; [...](3) a different policy preference in the two locales; (4) a disparity in the qualifications of the federal judges sitting in the two districts to pass on the same Pennsylvania law; or (5) an appreciable difference in docket congestion between the two districts"). In light of this analysis, the Court concludes that the scales of justice tip the public *Jumara* factors toward a transfer as well. *Id.*

V. CONCLUSION

Based on the foregoing, the Court finds that Sloane has failed to show cause why this matter that his attorneys erroneously filed in this District should not be transferred to the U.S. District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). An

---

[11] And another District Judge has recently taken senior status in the Johnstown Division, where no other District Judge sits.

[12] The Court recognizes that there are nominees pending for two of the open District Judge seats. However, it remains unknown if and when the Senate will act on those nominations.

appropriate Order follows transferring this matter to the Williamsport Division of that District, forthwith.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: July 27, 2016

cc/ecf: All counsel of record

      Clerk of Court

      U.S. District Court for the Middle District of Pennsylvania, Williamsport Division