# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS SLOANE, | No. 4:16-CV-01571 |
| Plaintiff. | (Judge Brann) |
| v. | |
| GULF INTERSTATE FIELD SERVICES, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

### FEBRUARY 26, 2018

Defendant Gulf Interstate Field Services, Inc., moved for summary judgment on Plaintiff Thomas Sloane's complaint. For the reasons that follow, that motion is denied.

## I. BACKGROUND

When oil and gas companies construct pipelines and related facilities, the companies utilize various inspectors to monitor the construction's progress.[1] Defendant Gulf Interstate Field Services ("Gulf Interstate") is a staffing company that provides various inspectors to the oil and gas companies for that purpose.[2] In 2014, Kinder Morgan, Inc., was refurbishing a compressor station along one of its

---

[1] ECF No. 210-4 (Declaration of Robert Sprick) ¶¶ 3-5.

[2] *Id.*

gas lines in Wyalusing, Bradford County, Pennsylvania (the "Station 319 Project"), and contracted with Gulf Interstate to obtain several inspectors for that venture.[3] Gulf Interstate provided several individuals, including Jack Groves as Chief Inspector, and Plaintiff Thomas Sloane as Welding Inspector.[4]

Mr. Sloane worked for Gulf Interstate and Kinder Morgan from April 15 through October 21, 2014.[5] He was paid a flat rate of $386 for every calendar day during that period; for those 190 days, then, his gross pay was $73,340.[6]

On September 16, 2015, Mr. Sloane initiated a suit against Gulf Interstate, alleging that he regularly worked more than forty hours in a week and that Gulf Interstate failed to compensate him time-and-a-half pay for those overtime hours.[7] His complaint argues that this compensation scheme violated the Fair Labor Standards Act ("FLSA") (Count I)[8] and the Pennsylvania Minimum Wage Act ("PMWA") (Count II),[9] and constituted unjust enrichment (Count III).[10] After discovery, on July 18, 2017, Gulf Interstate moved for summary judgment in its favor on all Counts, arguing that Mr. Sloane is exempt from the cited wage laws

---

[3] *Id.* ¶ 23.

[4] ECF No. 210-5 (Declaration of Jack Groves) ¶¶ 8-9.

[5] ECF No. 201-7, Ex. 4 (Thomas Sloane's Timesheets).

[6] ECF No. 210-7, Ex. 3.

[7] ECF No. 1 (Mr. Sloane's Complaint) ¶ 28.

[8] *Id.* ¶¶ 47-53.

[9] *Id.* ¶¶ 54-62.

[10] *Id.* ¶¶ 63-68.

because of his pay and job responsibilities.[11] Mr. Sloane opposed that motion on August 8, 2017.[12] The parties filed numerous depositions and declarations with their papers; this evidence will be discussed below.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[14] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[15] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[16]

---

[11] ECF No. 210.

[12] ECF No. 213.

[13] Federal Rule of Civil Procedure 56(a).

[14] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

[15] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[16] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B.     The Overtime Provision of the Fair Labor Standards Act

The FLSA requires certain employers to pay certain employees time-and-a-half pay when the employees work more than forty hours in a week.[17] No such overtime pay is required, however, when the employee is "employed in a bona fide executive, administrative, or professional capacity."[18]

The United States Department of Labor ("DOL") has issued several regulations implementing this law. The DOL has, for example, indicated that an employee is "employed in a bona fide administrative capacity" if:

(1)   he is "[c]ompensated on a salary . . . basis" at a fixed rate or higher,
(2)   his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of [his] employer or [his] employer's customers," and
(3)   his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."[19]

The DOL has also exempted so-called "highly compensated employees" from the time-and-a-half law's application. To be considered "highly compensated," an employee must:

(1)   be paid on a "salary . . . basis" at a fixed rate or higher, and
(2)   "customarily and regularly peform[] any one or more of the exempt duties or responsibilities of an executive,

---

[17]   29 U.S.C. § 207(a)(1).

[18]   29 U.S.C. § 213(a)(1).

[19]   29 C.F.R. § 541.200(a).

administrative[,] or professional employee," as those duties or responsibilities are defined elsewhere in the regulations.[20]

Gulf Interstate argues that Mr. Sloane is exempt from the FLSA overtime provision because he was "employed in a bona fide administrative capacity" or, in the alternative, because was a "highly compensated employee." Gulf Interstate bears the burden of proving every element of those exemptions, which exemptions are construed "narrowly against the employer."[21]

### C. Whether Mr. Sloane's Primary Duty Was Either (1) Directly Related to the Management or General Business Operations of Gulf Interstate or Kinder Morgan, or (2) Included the Exercise of Discretion and Independent Judgment

As noted above, to show that Mr. Sloane was "employed in a bona fide administrative capacity"—*i.e.*, to show that he qualified for the administrative exemption—Gulf Interstate must, *inter alia*, demonstrate that there is no factual dispute over two aspects of Mr. Sloane's duties a welding inspector. First, it must show that his "primary duty [wa]s the performance of office or non-manual work directly related to the management or general business operations" of Gulf Interstate or Kinder Morgan.[22] And second, it must show that this "primary duty include[d] the exercise of discretion and independent judgment with respect to

---

[20] 29 C.F.R. § 541.601(a).

[21] *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006).

[22] 29 C.F.R. § 541.209(a)(2).

- 5 -

matters of significance."[23] To qualify for the "highly compensated employee" exemption, Gulf Interstate need only demonstrate that Mr. Sloane "customarily and regularly performed" one of those administrative exemption duties. The parties do not appear to contest that Mr. Sloane was primarily engaged in "office or non-manual work" or that his work related to "matters of significance." They vigorously dispute the other aspects of his job, however.

A duty relates to "management or general business operations" when it relates to "assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."[24] Such work "includes, but is not limited to, work in functional areas such as tax[,] finance[,] accounting[,] . . . [and] quality control."[25] And a duty includes "the exercise of discretion and independent judgment" when it "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."[26] One factor to consider under this element is "whether the employee has authority to formulate, affect, interpret, or implement management

---

[23] 29 C.F.R. § 541.209(a)(3).

[24] 29 C.F.R. § 541.201(a).

[25] 29 C.F.R. § 541.201(b).

[26] 29 C.F.R. § 541.202(a).

policies or operating practices";[27] however, an employee does not exercise discretion and independent judgment when he "simply appl[ies] well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances."[28] The DOL has signaled that "[o]rdinary inspection work":

> generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals and other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work[,] but only within closely prescribed limits.[29]

Here, the parties have offered different accounts of, and perspectives on, Mr. Sloane's duties as a welding inspector. They both, however, focus their attention on two of those duties: Mr. Sloan's review of potential welders for Kinder Morgan's projects, and his approval *vel non* of the actual welds done on those projects.

Regarding Mr. Sloane's review of potential welders, Gulf Interstate's Operations Manager Andy Neuberger indicated that

> [a] welding inspector is required to test the welders on the client's job to determine whether they are capable of welding in compliance with

---

[27] 29 C.F.R. § 541.202(b).

[28] 29 C.F.R. § 541.704.

[29] 29 C.F.R. § 541.203(g)

> relevant standards and the client's specifications . . . . If a test weld fails to pass inspection to the welding inspector's satisfaction, the welding inspector has authority to prevent that welder from working on the project. [Further, i]f a welder routinely fails to make good quality welds, the welding inspector has the authority to recommend that the welder be dismissed from the project.[30]

Mr. Sloane agrees that he "tested every welder" on the Station 319 Project, but insists that his "approval" was based entirely on whether or not the welders "me[t] with approval of the code," which code "determines itself."[31] There was, in his words, no "leeway or anything."[32]

Regarding Mr. Sloane's approval of the welds done on Kinder Morgan's projects, Chief Inspector Jack Groves, Jr., stated that

> one of Mr. Sloane's job duties was to . . . ensure that [the welders] were using the proper weld procedure. While there are written weld procedures that the welders must follow, the procedures allow the welding inspector discretion in deciding whether certain parts of the procedure have been performed in a satisfactory manner. In fact, Kinder Morgan's weld procedures expressly state that the welding inspector can require more restrictive practices than those set forth in the weld procedure."[33]

Mr. Sloane explains that this aspect of his job simply required him to identify "discontinuities" in a given weld—"indications," in welding terminology—and

---

[30] ECF No. 210-9, Ex. G (Declaration of Andy Neuberger) ¶¶ 5-6.

[31] ECF No. 210-6, Ex. D (March 24, 2016 Deposition of Thomas Sloane) at 253.

[32] *Id.*

[33] ECF No. 210-5 (Declaration of Jack Groves) ¶ 11; *see also* ECF No. 210-11 (Kinder Morgan Welding Procedure Specification) (listing several "minimum practices" while stating that the "welding inspector may require more restrictive practices").

determine whether a given indication "meets a certain maximum tolerance in the code where it becomes a defect."[34] In other words, he would "basically look at the indication[ and] measure it,"[35] and, when an indication was "out of code," would indicate that the defect "ha[d] to be fixed."[36] He admitted that, on paper, Kinder Morgan's weld procedures allowed him to "require more restrictive practices" than those listed, but explained that such discretion was largely illusory—*i.e.*, it would have been impossible or illogical to deviate from the established standards.[37]

There is an obvious factual dispute over Mr. Sloane's job duties, with the parties offering vigorously opposing descriptions of it. Reading Mr. Sloane's deposition testimony, one might come away with the impression that he simply held up a ruler to various welds, wrote down the measurement he took, and determined whether that number fell within the code-prescribed range. His description of his review of potential welders suggests a similarly mechanical and proscribed role. The statements of Gulf Interstate employees, on the other hand, leave the impression that Mr. Sloane was autonomously making decisions about whether the welders' work and qualifications met his personal, subjective whims.

---

[34] ECF No. 210-6, Ex. D at 250.

[35] *Id.* at 259.

[36] *Id.* at 251.

[37] ECF No. 213-3, Ex. A (Declaration of Thomas Sloane) ¶ 34.

While one might classify Mr. Sloane's job as involving "quality control"[38]—since he was, after all, ensuring the "quality" of the welds done on Kinder Morgan's projects—one might just as easily classify it as "ordinary inspection work."[39]

A reasonable jury, then, could find either that Mr. Sloane's primary duty was not "directly related to the management or general business operations" of Gulf Interstate or Kinder Morgan, or that his duty did not "include[] the exercise of discretion and independent judgment with respect to matters of significance." This factual dispute is not appropriate for resolution at the summary judgment stage. Therefore, this Court will deny Gulf Interstate's motion for summary judgment on Count I of Mr. Sloane's complaint.[40]

As Gulf Interstate's brief indicates, Mr. Sloane's PMWA claim is analyzed under the same framework as his FLSA claim.[41] Therefore, this Court will deny summary judgment on Count II of Mr. Sloane's complaint. And, since Gulf Interstate's argument on Mr. Sloane's unjust enrichment claim is based on its

---

[38] 29 C.F.R. § 541.201(b).

[39] 29 C.F.R. § 541.203(g).

[40] Because this Court holds that Mr. Sloane's duties do not, as a matter of law, qualify for either of the exemptions, it need not—and will not—decide whether Mr. Sloane was paid on a "salary basis."

[41] ECF No. 211 at 28-29; *see also Jochim v. Jean Maedline Educ. Center of Cosmetology, Inc.*, 98 F. Supp. 3d 750, 756 (E.D. Pa. April 8, 2015) ("The Pennsylvania Minimum Wage Act mirros the FLSA . . . . Pennsylvania courts employ the same tests used by the federal courts and use federal case law to determine the governing standard.")

arguments regarding Mr. Sloane's FLSA and PMWA claims, this Court will likewise deny summary judgment on Count III of Mr. Sloane's complaint.[42]

### III. CONCLUSION

For the reasons listed above, Gulf Interstate's motion for summary judgment will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[42] Pertaining to its Motion for Summary Judgment, Gulf Interstate filed a Motion to Strike Portions of the Declaration of Thomas Sloane. ECF No. 216. Because this Court did not reference any of the challenged portions of Mr. Sloane's declaration in deciding the summary judgment motion, the motion to strike will be denied as moot.